J. JONES, J.,
specially concurring.
I concur in the Court’s opinion but wish to address two somewhat related issues. First, I agree that the teaming agreement was not sufficient to bind ENA after it received the contract award, but I think ENA’s subsequent actions toward Syringa were less than honorable. Because there was no enforceable contract, I don’t believe that a tortious interference with contract claim can be sustained against Mr. Gwartney, although in my estimation a tortious interference with prospective economic advantage claim could have survived summary judgment, if it had been alleged against him.
With regard to the teaming agreement, the Court correctly holds that the agreement was insufficient in setting out the details of the relationship between the parties following a contract award. The parties should have included provisions setting out their respective rights and obligations under the partnership agreement called for in the teaming agreement, or a mechanism by which those provisions could have been established, such as working out disputed provisions through use of binding arbitration. Neither approach was utilized by the parties and, therefore, the teaming agreement did not contain the essentials for an enforceable contract. It must be observed, however, that ENA was somewhat disloyal to its teaming partner, Syringa. When it appeared that the State was planning on having Qwest provide the connectivity services that ENA had intended on having Syringa provide under its bid, it didn’t take long for ENA to forsake its team partner and cozy up to Qwest. ENA acknowledged in its briefing and argument that it did not have the ability, standing alone, “to provide a complete, statewide bid in response to the [State’s request for proposal]” — it needed to team up with Syringa. After the contracts were awarded, and subsequently revised to essentially cut Syringa out, ENA does not appear to have worried too much about the fate of its former team partner and was not very straight-forward in letting Syringa know that it was being cut loose. ENA couldn’t have been admitted to the dance without the help of its team partner but didn’t have much problem switching dance partners once it got through the door.
Because the teaming agreement was insufficient for enforcement, Syringa’s claim against Mr. Gwartney for tortious interference with contract is not sustainable. That claim was alleged specifically against Gwartney, the Department of Administration, Zickau and Qwest. The tortious interference with prospective economic advantage claim was alleged only against Qwest. That claim did not depend upon the existence of an enforceable contract. Had it been alleged against Gwartney, I would have found sufficient evidence and inferences in the record to allow the matter to go trial. Gwartney appears to have been the architect of the State’s effort to bend the contracting rules to Qwest’s advantage. In deposition testimony, he essentially admitted knowing, even before the contract award was made on January 20, 2009, that Qwest would be “making the connections *69 and providing the broadband” for IEN.[2] This was the work that Syringa was to perform under its teaming agreement with ENA. Syringa alleges that Gwartney made threatening statements against Syringa on a couple of occasions, indicating he would “make sure Syringa would never get any of the IEN business.” In all, there was sufficient evidence to have sustained a cause of action for tortious interference with prospective advantage as against Gwartney, had one been pleaded against him. However, it was not.
Justice HORTON concurs.

. Although he subsequently claimed he misspoke.